**Thomas G. HOBBS, Appellant,**

v.

**Lucille P. MARKEY et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 5, 1965.

As Modified on Rehearing Feb. 4, 1966.

J. Montjoy Trimble, Kincaid, Wilson & Trimble, Lexington, for appellant.

Gayle A. Mohney and Robert F. Houlihan, Stoll, Keenon & Park, Armand Angelucci, County Atty., Lexington, for appellees.

CULLEN, Commissioner.

Appellant, Thomas G. Hobbs, who for several years had operated a commercial greenhouse on his land in an agricultural area of Fayette County, made application to the building inspector of the county for a permit to convert his greenhouse improvements into a gasoline filling station. The inspector denied the application. Hobbs appealed to the board of adjustment which, after a hearing at which a number of neighboring landowners protested the application, directed that the permit be granted. Mrs. Lucille Markey, who was one of the protesting neighbors and whose thoroughbred horse farm (famous Calumet Farm) lies across the road from the Hobbs property, appealed to the circuit court. Judgment was entered setting aside the order of the board of adjustment and from that judgment Hobbs has appealed to this Court.

The area in which the Hobbs property lies is zoned as an agricultural district, and the greenhouse is at the best a nonconforming use. (If the facts are as claimed by the appellees, it is a completely *illegal* use; but we need not go into that.) Under the applicable zoning statute, KRS 100.355 (2), in force at the time Hobbs made application for the building permit, and at the time of the proceedings before the board of adjustment, a nonconforming use could be changed to another nonconforming use "of the same or more restricted classification." (Under the specific terms of the Fayette County zoning ordinance a commercial greenhouse was in a less restricted classification than a filling station, so the statute would have permitted a change from a greenhouse to a filling station.) However, after the case had been appealed to the circuit court, and while it was there pending, the statute was amended to provide that a nonconforming use may not be changed to another nonconforming use.

The circuit court held that the amended statute was controlling and therefore the proposed change of uses was not allowable.

■ Hobbs' first contention is that since the amendment to the statute did not take effect until after commencement of the proceedings in the circuit court, the case must be governed by the statute as it existed prior to the amendment. Under the decision in Cayce v. City of Hopkinsville, 217 Ky. 135, 289 S.W. 223, this contention is not valid.

■ The next contention is that since Hobbs had incurred substantial expenses for attorney fees in prosecuting his application for a permit, and had devoted considerable time and effort towards obtaining the permit, before the statute was amended, he should be considered to have acquired "vested rights" which could not be extinguished by the amendment of the statute. While a number of decisions have made reference to "vested rights" in this context, we think this involves a misconception. Laws enacted under the police power can and often do take precedence over vested property rights; zoning laws are police power enactments and as such they can and do extinguish some vested rights. Euclid, Ohio v. Amber Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. However,

the extent to which property rights must yield to the police power is determined by a weighing of the private loss against the public benefit. Cf. Bowling v. City of Somerset, Ky., 333 S.W.2d 769.

■ We think that the rule represented by such holdings as that in Darlington v. Board of Councilmen of City of Frankfort, 282 Ky. 778, 140 S.W.2d 392, protecting a property owner against enactment of or change in a zoning law after he has commenced construction of improvements in reliance upon the existing law, means simply that the courts have felt that the loss the property owner would suffer in such a case is out of proportion to the public interest to be served by the zoning enactment. In our opinion there are two reasons why the rule is not properly applicable in the instant case. First, it appears that the main reason why Hobbs was required to spend time and money in connection with this application for a permit was to establish that his greenhouse was not a completely *illegal* use. This expenditure well might have been required merely to enable him to continue operating the greenhouse, without regard to the proposed conversion to a filling station, so the expenditure cannot be considered to have created any substantial equity in favor of Hobbs. Second, in the character of a nonconforming use the greenhouse existed to a considerable degree by sufferance rather than by right, so the claimed "right" of Hobbs to continue it or to change it is entitled to little weight in measuring it against the public interest to be served by the zoning law.

It is our conclusion that the lower court properly held applicable the amendment to the zoning statute.

Hobbs maintains that the amendment to the zoning statute should be held unconstitutional as special and local legislation, in violation of Sections 59 and 60 of the Kentucky Constitution. Prior to the amendment the statute relating to second-class cities and counties containing such cities, KRS 100.355(2), which allowed a change of a nonconforming use, was the same as that for first-class cities and counties containing such cities, KRS 100.-069. The amendment to KRS 100.355(2) destroyed this uniformity, and Hobbs argues that the effect was to create a special and local law for second-class cities and their counties. The difficulty with this argument lies in the fact that the statutes relating to zoning in cities of the third, fourth, fifth and sixth classes, and in counties containing such cities, say nothing at all about nonconforming uses. This being so, to accept appellant's argument would mean that the statutes relating to nonconforming uses in cities of the first and second classes, and their counties, both were unconstitutional as local and special legislation because there was no similar legislation for the other classes of cities. The appellant would gain nothing by our holding unconstitutional the amendment to KRS 100.355(2) because we would also be required to hold unconstitutional the original section, thus leaving no statute at all to authorize a change of a nonconforming use.

■ We do not intend to imply that any of the nonconforming use statutes are unconstitutional as local and special legislation—we merely are pointing out that the appellant could gain nothing by the acceptance of his argument.

Hobbs maintains that a decision of the board of adjustment may be set aside only if it is arbitrary, and there has been no showing here of arbitrary action. The answer is that the decision was set aside here because the statute subsequently was amended—the authority for the decision was abolished before the decision became irrevocable.

■ Hobbs seeks to invoke the rule that findings of fact by the board of adjustment are conclusive if supported by any substan-

tial evidence. He says that the board very well may have found that conditions of hardship existed such as to warrant issuance of the permit to Hobbs. Aside from the fact that the board made no specific findings we think it is sufficient to say that there is nothing in the record that would have supported a finding of hardship.

It is argued that the appellee, Mrs. Markey, should be barred by laches from protesting the proposed change of use. Conceivably, because Mrs. Markey made no objection when the greenhouse originally was built, or thereafter during its operation, she might be estopped from objecting to *its continued* use. But there is no reasonable theory upon which she could be held barred from protesting the proposed conversion to a filling station.

Finally, the contention is made that because Mrs. Markey's evidence before the board of adjustment did not show that a specific depreciation in monetary value of her farm would result from the proposed filling station, she was not a person "affected by" the order of the board of adjustment within the meaning of KRS 100.480(1), which authorizes appeals to be taken by such persons only. In our opinion the proximity of Mrs. Markey's farm was sufficient to justify her being considered a person affected by the order, and it was not necessary for her to prove that her property would be depreciated in value. See State ex rel. Housing Authority of St. Louis County v. Wind, Mo., 337 S.W.2d 554; McDermott v. Zoning Board of Appeals, 150 Conn. 510, 191 A.2d 551.

The judgment is affirmed.